**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM PRAILEAU,

                                        Plaintiff,

              v.                                                    1:17-CV-836
                                                                    (GLS/CFH)
THE STATE OF NEW YORK, et al.,

                                        Defendants.

---

APPEARANCES:                                  OF COUNSEL:

William Praileau
8 East 109th Street
New York, New York 10029
Plaintiff pro se

### REPORT-RECOMMENDATION AND ORDER

### I. Procedural Background

        Plaintiff commenced this action in the United States District Court for the Southern

District of New York ("Southern District") on October 7, 2016.  Dkt. No. 2 ("Compl.").  In lieu

of paying that Court's filing fee, he filed an application to proceed In Forma Pauperis

("IFP").  Dkt. No. 1.  On February 8, 2017, the Southern District granted plaintiff's IFP

application, permitting him to proceed without prepayment of fees.  Dkt. No. 10.  On May 3,

2017, the Southern District (1) dismissed from the action plaintiff's minor children, A.M.P.,

Y.A.P., A.A.P., and B.A.P; (2) dismissed from the action plaintiff "$10,000,000 (IN REM)";

(2) denied plaintiff's attempt to remove his state court case to the Southern District;

(3) dismissed defendants the United States, New York County District Attorney's Office,

City of New York, County of New York, and Superintendent of Downstate Correctional Facility; and (4) dismissed plaintiff's claims under the Foreign Sovereign Immunities Act. Dkt. No. 11.

In addition, the Southern District noted that plaintiff's complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") as the complaint did not set forth a "short and plain statement showing that the pleader is entitled to relief."  Dkt. No. 11 at 8.  The Order further concluded that venue was not proper in the Southern District, and directed plaintiff "to submit a declaration addressing why this case should not be transferred to the Northern District of New York . . . with the Court within 30 days after the date of this Order."  Dkt. No. 11 at 9.  The Southern District noted that, "[i]f Plaintiff does not respond to this Order within 30 days, the Court will transfer this case to the Northern District of New York under 28 U.S.C. § 1404(a).  On May 31, 2017, plaintiff filed an appeal of the Southern District's May 3, 2017 Decision and Order to the United States Court of Appeals for the Second Circuit.  Dkt. No. 12.  The status of that appeal is not clear.  On July 19, 2017, the Southern District transferred this action the Northern District of New York.  Dkt. No. 14.

The defendants that remain following the Southern District's review are the State of New York, County of Schenectady, County of Albany, Town of Glenville, Glenville Police Department, the State University of New York at Albany ("SUNY"), New York State Department of Correction and Community Supervision ("DOCCS"), New York State Division of Parole, Karen Drago, Schenectady County Court Judge; Polly Hoye, County Judge, State of New York; Amy Burock, Assistant District Attorney, Schenectady County;

2

New York State Unified Court System; Patricia O'Malley, Administrative Law Judge/Division of Parole Administrator; Janet Vazquez, Parole Officer, New York State Division of Parole; William Paolozzi, New York State Division of Parole; Kyle Reif, Parole Administrator, Great Meadows Correctional Facility; Craig Apple, Albany County Sheriff; Henry Buffardi, Schenectady County Sheriff; Superintendent, Marcy Correctional Facility; Superintendent, Governour Correctional Facility; Cape Vincent Correctional Facility; Superintendent, Great Meadow Correctional Facility; and Superintendent, South Port Correctional Facility; Superintendent, Cayuga Correctional Facility. See Compl. Plaintiff demands punitive damages of $313,000,000 and compensatory damages of $100,000,000. See Compl.[1]  For the following reasons, it is recommended that plaintiff's complaint be dismissed without prejudice.

## II.  Initial Review

The Southern District, after granting plaintiff IFP status, performed an initial review of plaintiff's complaint.[2]  Dkt. No. 11.  However, that Court appears to have reviewed only

---

[1]  It is not clear whether plaintiff seeks these amounts on each cause of action, or whether this is his damages demand overall.

[2]  In its May 2, 2017 Decision and Order, the Southern District observed that plaintiff has brought several cases in the Northern District arising out of the same, or similar facts, including section 1983 actions and petitions for habeas corpus relief.  Plaintiff's prior actions relating to these facts include: (1) Praileau v. Cty. of Schenectady, 09-CV-924 (TJM/GHL) (N.D.N.Y. Aug. 12, 2009) (§1983 excessive force, access to the courts); (2) Praileau v. Bezio, 9:11-CV-311 (GLS/DEP) (N.D.N.Y. Mar. 21, 2011) (habeas corpus); (3) Praileau v. Fischer, No. 12-CV-1261 (GTS/RFT) (N.D.N.Y. Aug. 8, 2012) (2006 arrest and conviction, "styled as a breach-of-contract action"); (4) Praileau v. Fischer, 12-CV-759 (DNH/RFT) (N.D.N.Y. May 7, 2012) (habeas corpus); (5) Praileau v. Fischer, No. 13-CV-102 (GLS/CFH) (N.D.N.Y. Jan. 28, 2013) (habeas corpus); (6) Praileau v. United States, 14-CV-245 (LEK/CFH) (N.D.N.Y. Mar. 6, 2014) (habeas corpus and conditions of confinement); and (7) Praileau v. Miller, No. 15-CV-498 (TJM/CFH) (N.D.N.Y. Apr. 27, 2015).  Dkt. No. 11 at 3-5.  In addition, plaintiff challenged the validity of the 2014 arrest warrant in the New York State Court of Claims, which concluded that "[Plaintiff] was arrested

those claims considered relevant to the Southern District. Id. This Court will review only those claims that the Southern District declined to address in order to determine whether the remaining claims should proceed against the remaining defendants. See id.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly,

---

and imprisoned pursuant to a facially valid PRS violation warrant," and dismissed the case. Praileau v. The State of New York, UID No. 2015-041-0007, Cl. No. 124185, Mot. No. M-85909 (N.Y. Ct. Cl. Jan. 23, 2015).

4

550 U.S. at 570.

### A.  Facts

Plaintiff's complaint, aptly described by the Southern District, is a difficult to follow "stream-of-consciousness airing-of-grievances."  Dkt. No. 11 at 2.  The claims in the complaint largely relate to a 2006 arrest, 2007 conviction, incarceration resulting from that conviction, and a 2014 arrest and incarceration for alleged parole violations.  See generally Compl. at 5 ¶¶ 25, 30, 31, 32.  As it relates to plaintiff's 2006 arrest and subsequent conviction, he claims that the arrest and conviction were invalid and/or fraudulent for several reasons, including arguing that the indictment was fraudulent and that a proper judgment of conviction was not entered or no judgment of conviction was entered.   Id. at ¶¶ 25, 31-32.  Plaintiff further provides that he has attempted to bring a number of actions regarding his improper arrest, conviction, and detention, but that various defendants and courts have been conspiring against him to prevent him from having his cases heard on the merits.  See generally Compl. at 3 ¶4.  Plaintiff attempts to bring claims for false arrest, false imprisonment, and malicious prosecution as it relates to his 2006, subsequent incarceration, and conviction.  He also alleges he was held past his release date.

Plaintiff also seeks redress relating to a 2014 arrest and detention regarding an alleged parole violation.  Compl. at 4 -5.  Plaintiff contends that the 2014 arrest warrant for the parole violation was illegal and fraudulent, and that he had committed no crime.  Id. ¶¶ 23-29.  Plaintiff further argues that he was not released from DOCCS custody at the required time – he contends he was supposed to be released on May 7, 2015 but was not

5

released until October 9, 2015 – and was intentionally kept incarcerated.  Id. ¶¶ 47-52.

Thus, it appears plaintiff is attempting to bring claims for false arrest, false imprisonment,

and due process violations in connection with his 2014 parole arrest and incarceration.

Finally, plaintiff sets forth what appear to be various violations of his Eighth

Amendment[3] right to be free from cruel and unusual punishment, or, as he designates,

"International Human Rights violations," relating to conditions of confinement at various

correctional facilities, apparently both during his incarceration following the 2006 arrest and

the 2014 alleged parole violation.


### B.  Original Arrest/Incarceration and Conviction

As it relates to plaintiff's original arrest in 2006, plaintiff alleges that he was

subjected to police brutality during a 2006 arrest by Glenville police officers, which

apparently resulted in his conviction for assault on a police officer.  Compl. at 3 ¶¶4-5.

Plaintiff claims the assault charge is "contrived" and a "cover up" for the officers' "brutality."

Id. at 3-4  ¶¶8-10.  Plaintiff further suggests that his conviction was invalid because it was

based on a fraudulent indictment and because "there has never been a valid accusatory

instrument filed against CLAIMANT/PLAINTIFF involving any crimes purported to be

convicted of."  Compl. at 5 ¶¶ 25, 30, 31.   Plaintiff also alleges that he was improperly held

past his release date, and attempts to bring a state law claim against DOCCS for

intentional infliction of emotional distress due to its intentional miscalculation of his release

---

[3]  If plaintiff is alleging that any of these violations occurred before he was convicted, they would
be assessed under the Fourth Amendment, which applies to pre-trial detainees.

dates.  Dkt. No. 2 at 8.  Finally, as it relates to his 2006 arrest, 2007 incarceration, and delayed release date, plaintiff contends that all defendants engaged in a "conspiracy/ENTERPRISE," apparently regarding his improper arrest, conviction, detention, being kept past his release date, and because he has been unable to have these issues addressed on the merits by a court.  Id. at 4 ¶12.

Plaintiff's claims regarding his 2006 arrest, indictment, and imprisonment are barred by Heck v. Humphry.  The Supreme Court of the United States has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Thus, Heck generally bars any section 1983 challenges to a conviction unless the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," also known as the "favorable termination" requirement.  Id. at 487.

Plaintiff has not shown that his conviction or sentence has been invalidated or overturned; thus, he cannot bring a section 1983 action for the claims he is attempting to bring, as he seeks to challenge the underlying indictment, and, therefore, his conviction. Although plaintiff's complaint appears to suggest that no valid accusatory instrument has

been filed against him or that no valid judgment of conviction has been entered, this does not appear to be the case. Compl. at 5 ¶¶24-25. The New York State DOCCS "look up" website provides that plaintiff was convicted of Criminal Possession of a Weapon in the Second Degree (Class C), Criminal Possession of a Weapon in the Third Degree (Class D), Assault in the Second Degree (Class D). See NYS DOCCS Lookup (*available at* http://nysdoccslookup.doccs.ny.gov) (last visited Nov. 1, 2017). Thus, plaintiff cannot seek redress regarding the validity of the criminal indictment, prosecutorial handling of his case, or his conviction through a section 1983 action unless and until he can demonstrate that a Court has overturned or otherwise invalidated his conviction. Heck, 512 U.S. at 487.

Accordingly, it is recommended that plaintiff's causes of action for false imprisonment,[4] false arrest,[5] malicious prosecution/prosecutorial misconduct,[6] intentional infliction of emotional distress as it relates to his conviction and incarceration,[7] abuse of process,[8] and conspiracy/"enterprise" be dismissed pursuant to 1915(e)(2)(B)(i), (ii) as such claims lack an arguable basis in law.[9]

---

[4] Plaintiff's first cause of action

[5] Plaintiff has not explicitly pleaded false arrest as a separate cause of action, but giving the pro se plaintiff the special solicitude due, the undersigned interprets plaintiff's complaint as attempting to raise a claim for false imprisonment as it relates to his incarceration following his 2006 arrest, 2007 conviction, and 2014 parole arrest.

[6] Plaintiff's sixth cause of action

[7] Plaintiff's third cause of action

[8] Plaintiff's fifth cause of action

[9] Although a conspiracy/"enterprise" claim was not explicitly pleaded as a separate cause of action, plaintiff raises such allegations throughout his complaint as it relates to his 2006 arrest, 2007 imprisonment, and 2014 arrest and incarceration. See generally Compl. Affording plaintiff special solicitude, the undersigned interprets plaintiff's complaint as raising a claim that defendants conspired

### C. 2014 Parole Violation and Incarceration

Plaintiff contends that he was arrested on January 27, 2014 on the SUNY campus pursuant to an invalid arrest warrant for parole violations.  He further contends that the arrest warrant and subsequent incarceration were invalid because (1) his underlying conviction, for which he was on parole, was invalid; (2) the probation officer who signed the warrant, Janet Vazquez, was without authority to do so; and (3) the warrant "fail[ed] to provide all the hallmarks of prima facie evidence of a valid warrant"; and (4) the warrant "demonstrate[d] wanton/fraudulent use of the CLAIMANT's/ PLAINTIFF's property" insofar as it altered one digit of his social security number and "conversion of the claimant's property, as the name used therein has been changed/altered."  Compl. at 5 ¶¶ 23, 27-28.

### 1. Arrest/Incarceration improper based on illegality of underlying conviction

The violation reports indicate that plaintiff was charged with "failure to report, changing his approved residence without knowledge of Parole Officer and failure to participate in anger management counseling" and because he "left . . . New York City and went to Albany, New York, without the permission of Parole Officer."  Compl. at 16.[10]  As indicated above, plaintiff contends that the warrant and arrest were invalid, among other reasons, because "[n]o crime had been committed" and because there was no judgment

---

against him to falsely arrest, prosecute, and incarcerate him.

[10]  Plaintiff attaches to the complaint a "first supplementary violation of release report" stating charging plaintiff with "failure to report," "changing his approved residence without knowledge of Parole Officer, and failure to participate in anger management counseling."  Compl. at 16.

9

entered against him or valid accusatory instrument filed.  Compl. ¶¶19, 24-25, 37.

As a determination by this Court that the 2014 parole arrest was improper due to the illegality of his 2006 arrest/2007 conviction would necessarily invalidate his underlying conviction, these claims also are barred by Heck.  512 U.S. at 487.  Further, insofar as plaintiff's complaint can also be read as challenging the terms of his supervised release, this claim is also barred by Heck.  See Webster v. Himmelbach, __F. Supp. 3d __, 2017 WL 4286656, at *9 (W.D.N.Y. Sept. 27, 2017).  Finally, to the extent plaintiff may be arguing that the parole revocation, and, thus, his incarceration following the arrest for parole violations was improper, "[s]ince [p]laintiff has not established that the parole revocation has been invalidated . . . [p]laintiff cannot assert a § 1983 claim as an improper collateral attack upon the validity of his . . . parole revocation."  Webster, 2017 WL 4286656, at *9 (citing Lee v. Donnaruma, 63 F. App'x 39, 41 (2d Cir. 2003) (summary order)).  Thus, plaintiff may not proceed on these claims at this time as they are barred by Heck.  Id.[11]

## 2.  Arguments Regarding Validity of 2014 arrest warrant

In addition to arguing that his parole arrest and incarceration were improper because his original conviction was invalid and "no crime was committed," plaintiff sets

---

[11]  The Court has addressed, and dismissed as barred, a very similar argument of plaintiff's in a prior case, Praileau v. Fischer, et al., 1:12-CV-1261 (GTS/RFT) (N.D.N.Y. Aug. 23, 2012) (citing Duamutef v. Morris, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997)), Dkt. No. 3 at 5; see also Dkt. No. 10 (adopting Report-Recommendation and Order in full).  There, the Court concluded that plaintiff's claims regarding the validity of his parole, which he attempted to bring forth as a breach of contract case, were barred by Heck because plaintiff "has fails [sic] to show that this conviction or sentence has been overturned."  In finding the claims to be barred by Heck, the Court noted that plaintiff " improperly attacks the validity of his parole by attacking the validity of the indictment which ultimately brought about his conviction and sentence."  Dkt. No. 3 at 4-5.

forth various arguments about the validity of the arrest warrant.[12]  Plaintiff's violation reports

indicate that plaintiff was charged with "failure to report, changing his approved residence

without knowledge of Parole Officer and failure to participate in anger management

counseling" and because he "left . . . New York City and went to Albany, New York, without

the permission of Parole Officer."  Compl. at 16.  Plaintiff contends that the warrant and

arrest were invalid because "[n]o crime had been committed."  Id. at 4.  He also contends

that his probation officer Janet Vazquez "issued and signed a purported warrant" for his

arrest and "certified" that he was "a person convicted of a crime, that plaintiff was placed

on probation/Post Release Supervision in the care of [DOCCS], and that Plaintiff had

forfeited his probation."  Id.   Plaintiff argues that Vazquez did not have authority to issue

the warrant.  In addition, he contends that the warrant was "void on its face as it fails to

provide all the hallmarks of prima facie evidence of a valid warrant."  Id. at 5 ¶28.  He also

appears to contend that the warrant was invalid because it "alters" his social security

number by incorrectly listing one of the numbers.  Id. at 5 ¶28.  Plaintiff also alleges that

the warrant amounts to "CONVERSION of the CLAIMANT's property, as the name used

therein has been changed/altered."  Id. ¶27.

   Insofar as plaintiff contends that his 2014 arrest was improper due to an invalid

arrest warrant, these claims amount to a challenge of the procedures which lead to the

---

[12]  Plaintiff attaches to the complaint a "First Supplementary Violation of Release Report" stating charging plaintiff with "failure to report," "changing his approved residence without knowledge of Parole Officer, and failure to participate in anger management counseling."  Compl. at 16.

revocation of his parole, and, as a result, his incarceration.[13] "Courts have applied Heck to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside." Lee, 63 F. App'x at *1 (citing Sumter v. Marion, 98 CIV. 2744 (RPP), 1999 WL 767426, at *5 (S.D.N.Y. Sept. 28, 1999) (additional citations omitted)).

### D.  Held Past Release Date

Next, plaintiff contends that DOCCS improperly held him in custody past his release date following his initial arrest[14] and following his 2014 parole violation.  Compl. at 7 ¶¶43-53.  The only defendants plaintiff names in this cause of action are Patricia O'Malley, who he states is a "New York State Division of Parole Administrative Judge/Hearing Officer," and DOCCS  Compl. at 7.  He also contends that unspecified defendants engaged in a conspiracy/"enterprise" to hold him past his release date.  Id. at 7-8 ¶53.

First, "'[i]n order to obtain relief for continued detention under § 1983, a prisoner must show that a prison official was aware of his overstay and was deliberately indifferent in rectifying the problem.'"  Brunson v. Duffy, 14 F. Supp. 3d 287, 293 (S.D.N.Y. 2014) (quoting Todd v. Hatin, No. 2:13-CV-05, 2013 WL 3990815, at *5 (D.Vt. Aug. 5, 2013) (finding that plaintiff stated a § 1983 claim where he alleged that prison officials "kn[ew] about his unwarranted imprisonment" and that there was a "connection between the

---

[13] It appears that plaintiff has commenced several other habeas corpus actions regarding 2006 arrest, incarceration, and subsequent conviction. Those cases have been dismissed for various reasons. See n.2, supra.

[14] Plaintiff argues that he was supposed to be released from custody on July 7, 2011, but was held until November 7, 2011. Compl. at 7.

[d]efendants' inactions or ineffectual actions and the time that [the plaintiff] was wrongfully

incarcerated").  Plaintiff indicates that "DOCCS was put on notice that the October 9th, 2015

release date was incorrect before the lapse in the purported authority," but does not

indicate how defendant DOCCS was responsible for plaintiff's continued incarceration or

name any specific DOCCS employees who may have been personally involved in the

refusal to timely release plaintiff from custody.  Brunson, 14 F. Supp. 3d at 293 (quoting

Todd v, 2013 WL 3990815, at *5 (finding that plaintiff stated a § 1983 claim where he

alleged that prison officials "kn[ew] about his unwarranted imprisonment" and that there

was a "connection between the [d]efendants' inactions or ineffectual actions and the time

that [the plaintiff] was wrongfully incarcerated")).  Courts have held that mere notice,

without more, is

> insufficient to allege that [the d]efendant . . . was 'deliberately
> indifferent' to [the p]laintiff's situation, or that he took any
> actions resulting in a denial of [the p]laintiff's due process rights
> in his attempts to secure release.  For example, the Complaint
> does not allege that [the d]efendant personally knew about [the
> p]laintiff's prolonged incarceration . . . [or] that he created a
> policy or custom under which [the p]laintiff was denied the
> opportunity to be heard, or that he was grossly negligent in
> supervising the employees who . . . otherwise new about his
> claim.

 Id. (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).  In addition to failing to

specify DOCCS knowledge about his delay in release for both the period of incarceration

following his parole revocation and the delay in release following his conviction, plaintiff has

failed to name a specific prison official who was aware of, or responsible for, his delayed

release following his parole arrest.  Plaintiff also does not provide any support for an

argument that his continued detention was done with deliberate indifference.  Brunson, 14

13

F. Supp. at 293.

Plaintiff also fails to sufficiently specify Patricia O'Malley's involvement in his delay in release from custody.  Plaintiff claims that Patricia O'Malley "discussed" a May 2015 release date in Albany County Correctional Facility.  Compl. at 7.  However, this bare statement is insufficient, even at the pleading stage.  Plaintiff fails to set forth any additional facts to support this claim or indicate how O'Malley was involved in his apparent delayed release from confinement or set forth any connection between O'Malley's apparent discussion of a release date at Albany County Correctional Facility and plaintiff's delayed release from DOCCS' custody.  Thus, plaintiff wholly fails to set forth O'Malley's personal involvement.  It is well settled that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).

Insofar as plaintiff seeks to bring a state law claim for intentional infliction of emotional distress, it is recommended that the Court decline to exercise its supplemental jurisdiction at this time, as the undersigned is recommending dismissal of plaintiff's federal claims.  See 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed).  Further, there is insufficient information for the Court to be able to address both the federal claims in the complaint, as well as this state law claim.

Accordingly, as plaintiff has failed to sufficiently detail any DOCCS officials' awareness in his delayed release from incarceratio,n both following his original arrest and parole arrest, and also failed to specify Patricia O'Malley's personal involvement in either

14

delayed release, it is recommended that these claims be dismissed without prejudice and with opportunity to amend to specify these defendants' involvement in his delay in release from custody.

### E.  Access to the Courts

Plaintiff appears to allege that his First Amendment right of Access to the Courts was violated while he was incarcerated at Southport Correctional Facility.  Plaintiff alleges that Southport Correctional Facility denied him access to the courts insofar as it "refused to allow Federal Habeas Corpus Petitions to be mailed to the United States District Court sent multiple times therefrom beginning on or about the seventh (7th) day of May 2015." Compl. at 10 ¶79.  Plaintiff claims that "as the direct and proximate outrageous conduct of Defendants as previously described, Plaintiff suffered and continues to suffer emotional distress, mental anguish and pain associated with being unlawfully incarcerated and separated from his family . . ." Id. at 10-11.  He further contends that "[t]his policy exercised at Southport Correctional Facility is part of a statewide policy of denial of access to the courts by: a) refusing to timely file any paperwork submitted; or b) to refuse to provide the necessary documents required for relief in the original instance." Id. at 11.  Plaintiff provides that "these offenses and can be traced in the history of the relief sought in New York Courts, both state and federal, and as such JUDICIAL NOTICE of the unrebutted affidavits and related evidence previously submitted is requested herein." Id.  Plaintiff additionally argues that "[u]pon the affidavits previously submitted to New York courts and the documents issued in response, it is a matter of State policy to exercise

15

fraud in the furtherance of the interest of an enterprise to the detriment of rights guaranteed under the Constitution of the United States (of America), and of the Human Rights guaranteed under the Treatises the United States has agreed to, including but not limited to:"[15] Id. at 11 ¶84.

"Interference with legal mail implicates a prison inmate's rights to access the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis v. Goord, 20 F.3d 346, 351 (2d Cir. 2003).   Further, "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Id. (citing Heimerele v. Attorney General, 753 F.2d 10, 12-13 (2d Cir. 1985)).  This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." Herrera v. Scully, 815 F.Supp. 713, 725 (S.D.N.Y. 1993).  To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 353 (1996).   To demonstrate an "actual injury," the plaintiff must allege that the defendant's interference "frustrated or impeded his efforts to pursue a non-frivolous legal claim."  Konigsberg v. Leferve, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003); see also Cancel v. Goord, 00 CIV 2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").

---

[15]  Plaintiff does not list anything else here.  See Compl. at 11 ¶84.

Here, plaintiff does not specify any injury he suffered to a nonfrivilous legal action as a result of the Superintendent of Southport Correctional Facility's alleged interference with his ability to mail habeas corpus petitions.  "The court cannot presume harm in evaluating whether defendants have violated plaintiffs right of access to the courts." Konigsberg, 267 F. Supp. 2d 255, 262 (citing Lewis v. Casey, 518 U.S. 343, 360 n.7 (1996).  Although plaintiff makes general references to emotional distress, which he arguably attributes to defendant's interference with his mail and access to the courts, the "injury" courts look toward is whether the plaintiff suffered harm to a non-frivolous legal claim, not emotional distress.  Koningsberg, 267 F. Supp at 261.

Moreover, plaintiff does not explain how the Superintendent of Southport, who he does not identify by name, was personally involved in these alleged constitutional violations.  Although plaintiff contends that there exists at Southport, a "statewide policy" of refusing to timely submit paperwork or provide "the necessary documents for relief," plaintiff's claims are wholly conclusory.  Compl. at 11.  Further, plaintiff does not specify how the only named defendant in this cause of action, the Superintendent of Southport Correctional Facility, was personally involved in the alleged constitutional violations.  It is not sufficient for plaintiff to name and attempt to hold the Superintendent liable solely due to his supervisory role.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Supervisory personnel may be considered personally involved in their subordinate's conduct if:

> (1) the defendant participated directly in the alleged
> constitutional violation;
> (2) the defendant, after being informed of the violation through
> report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance

> of such a policy or custom;
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights
> of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)[16] (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).  Absent the supervising officer's direct involvement or a subordinate's underlying constitutional violation, there can be no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability.").

     Finally, insofar as plaintiff refers to documents submitted to state courts in prior cases, Compl. at 11 ¶84, this reference to unspecified cases does not serve to incorporate these filings into the action currently pending before the Court.  In order for the Court to consider any claims or documents in reviewing this complaint, they must be filed in this action as part of the complaint.  The Court is not required to search the record, much less search other cases from this Court and other courts, in order to attempt to identify the facts and documents to which plaintiff makes vague reference.

---

[16]    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Accordingly, it is recommended that plaintiff's claim of access to the courts, alleged against the Superintendent of Southport Correctional Facility, be dismissed without prejudice and with opportunity to amend so that plaintiff may (1) specify the Superintendent of Southport Correctional Facility's personal involvement in the alleged denial of access to the courts, and (2) detail the specific injury plaintiff faced, if any, to a non-frivolous legal claim(s) as a result of the alleged interference.

### F. "International Human Rights Abuse Standards"

Plaintiff contends that he faced a serious of violations of "International Human Rights Abuse Standards" at the various facilities where he has been incarcerated. Compl. at 12-13. Giving plaintiff special solicitude, the undersigned interprets these claims regarding his conditions of confinement as denials of his Eighth Amendment right to be free from cruel and unusual treatment.

Plaintiff does not specify at which facilities each of the violations occurred, nor does he identify the staff personally involved in the alleged violations. Instead, in one run-on paragraph, plaintiff contends that he suffered the following: (1) being moved to the "psych ward" after defending himself, (2) forced to live in a cell with "a killer" who he appears to allege subjected him to "assaults and battery"; (2) denied family visitation; (3) denied phone contact with family; (4) denied "timely mail with family"; (5) "denied stationary purchases to have resources to contact family"; (6) denied nutritious sustenance" and "sufficient daily caloric intake of sustenance"; (7) "subject to mental health experiments," (8) "subject to electro-magnetic torture directed at the brain";

19

(8) "psychopharmaceuticals involuntarily administered in food"; (9) "forced to remain naked for days on end in a cell without cause or explanation"; (10) denial of food by corrections officers; (11) assault and battery by corrections officers; (12) "subject to defamatory language & racial slurs by government staff"; (13) "correctional officers coming into the cell to administer torture after protesting, investigating and attempting to redress the detention beyond the legal date issued and suffering physical injuries therefrom"; (14) and mental health staff "visiting to provoke poor reaction by banging on cell cage on windows until you respond to their questions (a respectful decline of mental health services is not acknowledged), refusing to identify themselves and/or provide their official title, and threatening eternal detention by changing the classification status from inmate to patient, and simultaneously nullify all capacity to seek redress in any court of law as one's capacity to sue is unilaterally stripped from you."  Compl. at 12.  Plaintiff contends that these conditions "are likened unto pockets of hell on Earth, where the devil captives are not seen for what they are, but maintain a mask of statutory legitimacy where there is not an ounce of human dignity that remains unscaved [sic].  Who can make war with the Beast."  Id. at 13.

As a threshold matter, as noted, personal involvement is a prerequisite to section 1983 claims.  McKinnon, 568 F.2d at 934.  Plaintiff contends that each defendant superintendent of the named correctional facilities "had a duty under the law to verify the nature of the paperwork issued to confirm the basis for detention and each categorically dismiss all semblance of such duty, upon information and belief, in the furtherance of conspiracy and the interest of the enterprise."  Compl. at 12-13 ¶¶ 96-97.  He does not

20

explain the Superintendent's involvement in the above mentioned conditions or deprivations.

Plaintiff attempts to be setting forth supervisory liability claims against the unnamed officers of the various correctional facilities. However, as noted above, the mere fact that these superintendents held positions of authority is not enough to state a section 1983 claim against them. See Black, 76 F.3d at 74. Because plaintiff has not set forth sufficient facts about each of the alleged unconstitutional conditions of confinement, nor identified the individuals he purports to have been directly involved in theses violations and at which facility each of the alleged violations occurred, the undersigned is unable to sufficiently assess these claims. Even affording plaintiff special solicitude, his "International Human Rights Abuse standards" claims, as currently pleaded in the complaint, are conclusory, and fully fail to meet the pleading standards required by Rules 8 and 10. See FED. R. CIV. P. 8, 10. Accordingly, it is recommended this cause of action, which the undersigned interprets as setting forth claims for violations of his Eighth Amendment right to be free from cruel and unusual punishment, be dismissed without prejudice and with opportunity to amend as specified herein.

### G. Due Process - SHU Confinement[17]

Plaintiff contends that, while at Southport Correctional Facility, he was kept "isolated

---

[17] SHUs, or secured housing units, exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

from the general inmate population" in SHU "and even then while at Southport Correctional Facility beyond the May 2015 presumed release date, isolated even further by being placed on an entire gallery or two to three additional inmates placed later and NO ONE providing a classification for the entire tier/gallery." Id. at 13. Arguably, plaintiff may be claiming that he was improperly denied due process in relation to his placement in SHU.

An inmate has a right to be free from unnecessary restrictive confinement. Although there is no "bright-line" rule for which a certain period of SHU confinement implicates a liberty interest, the Second Circuit has held, where a plaintiff is confined for "an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004) (quoting Colon v. Howard, 215 F.3d 227, 234 (2d Cir. 2000)). Although restrictive confinements that are fewer than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interests," it may "constitute atypical and significant hardships if the conditions were more severe than then normal conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995).

Here, the undersigned can not assess whether plaintiff had a protected liberty interest in his being free from SHU confinement because plaintiff does not provide how long he was placed in SHU or segregated confinement. Further, the undersigned is also unable to assess plaintiff's claim because plaintiff has not pleaded any facts regarding his conditions of confinement while in SHU in order for the Court to assess whether the

22

specific conditions of his confinement were atypical when compared to both the conditions in the general population as well as conditions of those in other types of segregated confinement. Scott v. Coughlin, 78 F. Supp. 2d 299, 306 (S.D.N.Y. 2000) (citing Arce v. Walker, 139 F. 3d 329, 336 (2d Cir. 1998)).

Furthermore, plaintiff again fails to specify the personal involvement of the defendant. In order for plaintiff to bring a claim for denial of due process against the Superintendent of Southport Correctional Facility, plaintiff must specify that defendant's direct involvement in the denial of his due process rights. See McKinnon, 568 F.2d at 934.

Accordingly, it is recommended that, insofar as plaintiff's complaint can be read as setting forth a claim for denial of due process, such claim be dismissed without prejudice to provide plaintiff an opportunity to amend to (1) specify the personal involvement of the Superintendent of Southport Correctional Facility, and (2) set forth additional details regarding his SHU confinement, such as the number of days he was in SHU and the conditions he faced in SHU when compared with the condition of others in the general inmate population and others in segregated confinement.

## H. **Conspiracy/"Enterprise"**

Plaintiff alleges throughout his complaint that the various defendants acted "jointly and severally as an ENTERPRISE" and have "by way of conspiracy hitherto nullified all opportunities for redress" apparently regarding his original 2006 arrest, incarceration, and conviction. Compl. at 3. Plaintiff also appears to contend that every defendant, including the New York State Court of Appeals and the Third and Fourth Department of the

Appellate Division, are engaged in a conspiracy or "enterprise" relating to his original arrest and incarceration as well as his parole arrest.  As it relates to the courts, who he does not name as defendants in the caption, he appears to suggest that they are part of a conspiracy insofar as they have "[e]xercised fraud or refused to reach the merits in furtherance of the conspiracy /ENTERPRISE."  Id. at 13.

Although plaintiff repeatedly refers, in nearly all causes of action, to a conspiracy or enterprise, plaintiff does not specify each defendants' personal involvement or demonstrate how defendants' acted in concert to deprive him of his constitutional rights.  To set forth a conspiracy claim under section 1983, a plaintiff must demonstrate that a defendant "acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y.1 995) (citations and internal quotation marks omitted).   General conclusory allegations of conspiracy to deprive a person of his or her constitutional rights do not state a claim for relief under section 1983.  Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir. 1997); Vega v. Artus, 610 F. Supp. 2d 185, 199 (quoting Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 2000) ("[W]here the personal involvement of a defendant in a Section 1983 violation is premised upon a claim of conspiracy, '[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.'")).

Insofar as plaintiff contends that unspecified defendants engaged in a conspiracy to illegally arrest, detain, and prosecute him, such claims, as discussed in detail above, are barred by Heck as a conclusion that defendants conspired to falsely arrest, detain, and

prosecute plaintiff would necessarily invalidate his conviction.  To the extent plaintiff alleges that various defendants conspired to deprive him of other constitutional rights, such as access to the courts and his claims relating to his conditions of confinement, plaintiff must provide additional details in order to set forth how each individual defendant was personally involved in these violations as well as *non-conclusory* details as to how defendants were engaged in a conspiracy to violate his constitutional rights.

## I. **No Claims Stated**

Although named in the caption, plaintiff does not set forth any claims against the following defendants: Superintendents of Downstate Correctional Facility, Marcy Correctional Facility, Governor Correctional Facility, Cape Vincent Correctional Facility, Great Meadow Correctional Facility, Cayuga Correctional Facility; the State University of New York at Albany;[18] and William Paolozzi.  See generally Compl.  "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."  Cipriani v. Buffardi, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007).

As plaintiff has failed to allege these defendants' personal involvement, as he has not set forth facts and claims specifying which rights he alleges each defendant has violated and how each defendant was involved in those violations, it is recommended that all claims be dismissed without prejudice against the Superintendents of Downstate

---

[18]  Beyond listing it in the caption, plaintiff's only mention of the State University of New York at Albany is that he was arrested on the school's property.  Compl. at 4 ¶13.  He does not explain how the State University of New York at Albany violated any of his constitutional rights.

Correctional Facility, Marcy Correctional Facility, Governor Correctional Facility, Cape

Vincent Correctional Facility, Great Meadow Correctional Facility, Cayuga Correctional

Facility; the State University of New York at Albany; and William Paolozzi.  See Fedele v.

Harris, 69 F. Supp. 3d 313, 320 (N.D.N.Y. 2014) (citing Purdie v. Mahoney, No. 9:05-CV-

0705, 2005 WL 3050969, at *1 (N.D.N.Y. Nov. 14, 2005) (stating that, to satisfy the

personal involvement requirement, a plaintiff must "set forth allegations of personal

involvement by each named defendant in his complaint, and may not meet this obligation

with conclusory allegations," and that "he must name [defendants] in the caption of his

complaint and set forth specific allegations of wrongdoing as to each individual in the body

of his complaint")).


### III.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 2) be dismissed in its entirety

without prejudice, and that plaintiff be permitted an opportunity to amend, and that such

amended complaint be due within thirty (30) days of the District Judge's Decision and

Order reviewing this Report-Recommendation and Order,[19] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation

---

[19] Plaintiff is advised that, if the District Judge, upon review of this Report-Recommendation and Order, permits plaintiff to submit an amended complaint, and plaintiff chooses to submit one, the amended complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, including any attachments or exhibits. Plaintiff is further advised that, should the District Judge adopt the undersigned's findings regarding Heck, plaintiff may not raise in an amended complaint any claims the Court determines to be barred by Heck *unless and until he demonstrates his conviction or sentence has been overturned or invalidated by a court of law*.

and Order on plaintiff in accordance with the Local Rules.

      **IT IS SO ORDERED**.

      Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

      Dated: November 8, 2017
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

27